IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
August 10, 2004 Session

## JESSE HADDOX v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. C-3610      Cheryl Blackburn, Judge**

**No. M2003-00514-CCA-R3-PC - Filed November 10, 2004**

In 1981, a Davidson County jury convicted the Petitioner, Jesse Haddox, of second-degree murder, and the trial court sentenced him to life in prison. In 2002, the Petitioner filed a post-conviction petition requesting DNA[1] testing pursuant to the Post Conviction DNA Analysis Act of 2001. The trial court denied the Petitioner's post-conviction petition, concluding that the results of any tests of the remaining DNA evidence would not exonerate the Petitioner. The Petitioner now appeals, contending that the trial court erred by denying his post-conviction petition. After thoroughly reviewing the record and the applicable law, we conclude that there exists reversible error in the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed and Remanded**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and NORMA MCGEE OGLE, J., joined.

R. Claiborne Richards, Jr., Nashville, Tennessee, and Vanessa Potkin, New York, New York, for the appellant, Jesse Haddox.

Paul G. Summers, Attorney General and Reporter; Richard H. Dunavant, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Roger D. Moore, Assistant District Attorney General for the appellee, State of Tennessee.

## OPINION
### I. Facts

---

[1]DNA Analysis "means the process through which deoxyribonucleic acid (DNA) in a human biological specimen is analyzed and compared with DNA from another biological specimen for identification purposes." Tenn. Code Ann. § 40-30-302.

In 1978, a Davidson County grand jury indicted the Petitioner, Jesse Haddox, for three counts: burglary in the first degree and petit larceny; concealing stolen property; and murder in the first degree. The Petitioner pled not guilty to all the charges, and was tried only for the murder charge, which was subsequently amended to murder in the second degree. The Petitioner was first tried in 1979, and the trial court granted him a mistrial because the jury was unable to reach a verdict. In 1981, the Petitioner was again tried, and the jury found the Petitioner guilty of second degree murder and he was sentenced to life imprisonment. On direct appeal, this Court affirmed the Petitioner's conviction and the Tennessee Supreme Court denied his request for permission to appeal. The Petitioner was released from prison on parole in 2003.

On October 28, 2002, the Petitioner filed a pro se post-conviction petition requesting that a red baseball cap, hair follicles and fingerprints from the crime scene be submitted for DNA analysis pursuant to the Post-Conviction DNA Analysis Act. See Tenn. Code Ann. §§ 40-30-301 to -313 (2003).[2] In the petition, the Petitioner contended that DNA analysis of such material evidence would establish his innocence. The Petitioner also filed a request for counsel pursuant to Tennessee Code Annotated section 40-30-307, which the trial court denied. The trial court dismissed the Petitioner's post-conviction petition. It is from this order of the trial court that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner contends that the trial court erred when it dismissed his petition for post-conviction relief because he is entitled to DNA testing according to the Post-Conviction DNA Analysis Act. The Post-Conviction DNA Analysis Act provides:

> . . . [A] person convicted of and sentenced for the commission of first degree murder, second degree murder, aggravated rape, rape, aggravated sexual battery or rape of a child, the attempted commission of any of these offenses, any lesser included offense of these offenses, or, at the direction of the trial judge, any other offense, may at any time, file a petition requesting the forensic DNA analysis of any evidence that is in the possession or control of the prosecution, law enforcement, laboratory, or court, and that is related to the investigation or prosecution that resulted in the judgment of conviction and that may contain biological evidence.

Tenn. Code Ann. § 40-30-303. Under the Post-Conviction DNA Analysis Act, the trial court, after affording the prosecution the opportunity to respond, must order a DNA analysis if it finds the following:

> (1) A reasonable probability exists that the petitioner would not have been prosecuted or convicted if exculpatory results had been obtained through DNA analysis;

_____

[2] Prior to 2003, the statutes were numbered as 40-30-401 to -413. In 2003, the statutes were recodified as sections 40-30-301 to -313. In order to remain consistent, we use the 2003 statute numbers.

(2) The evidence is still in existence and in such a condition that DNA analysis may be conducted;

(3) The evidence was never previously subjected to DNA analysis or was not subjected to the analysis that is now requested which could resolve an issue not resolved by previous analysis; and

(4) The application for analysis is made for the purpose of demonstrating innocence and not to unreasonably delay the execution of sentence or administration of justice.

Tenn. Code Ann. § 40-30-304 (2003).[3]

The scope of our review is limited, as the post-conviction court is given considerable discretion in deciding whether the Petitioner is entitled to relief under the Post-Conviction DNA Analysis Act. See Shuttle v. State, No. E2003-00131-CCA-R3-PC, 2004 WL 199826, at *4 (Tenn. Crim. App., at Knoxville, Dec. 16, 2004), *perm. to app. denied* (Tenn. Apr. 2, 2004). Therefore, this Court will not reverse the post-conviction court unless its judgment is not supported by substantial evidence. State v. Hollingsworth, 647 S.W.2d 937, 938 (Tenn. 1983); see also Ensley v. State, No. M2002-01609-CCA-R3-PC, 2003 WL 1868647, at *4 (Tenn. Crim. App., at Nashville, Apr. 11, 2003), *no perm. app. filed*.

Second degree murder is among the crimes for which a petitioner may request, at any time, DNA analysis of any evidence in possession of the prosecution or laboratory. Tenn. Code Ann. § 40-30-303. Further, the trial court must order DNA analysis of such evidence only if a petitioner satisfies all of the statutory requirements. Tenn. Code Ann. § 40-30-304. "The absence of any one of the four statutory conditions results in the dismissal of the petition." Alley v. State, No. W2004-01204-CCA-R3-PD, 2004 WL 1196095, at *2 (Tenn. Crim. App., at Jackson, May 26, 2004), *no perm. app. filed*; see also Buford v. State, No. M2002-02180-CCA-R3-PC, 2003 WL 1937110, at *6 (Tenn. Crim. App., at Nashville, Apr. 24, 2003), *no perm. app. filed*.

The Petitioner requested that the following be submitted for DNA analysis: "a red cap found at the crime scene, the hair follicle lifted therefrom, and fingerprints lifted from the crime scene." The trial court applied the factors set forth in Tennessee Code Annotated section 40-30-304 and

---

[3]Additionally, we note that a court *may* order DNA analysis if it finds the following:

(1) A reasonable probability exists that analysis of the evidence will produce DNA results which would have rendered the petitioner's verdict or sentence more favorable if the results had been available at the proceeding leading to the judgment of conviction. . . .

Tenn. Code. Ann. § 40-30-305(1) (We note that Sections 2, 3 and 4 of § 40-30-305 are identical to Sections 2, 3, and 4 of §40-30-304.). However, since the trial court did not consider this statute in its decision, we will only discuss Tennessee Code Annotated section 40-30-304, which the trial court considered in issuing its opinion and which requires mandatory DNA testing if the statutory requirements are met.

found that there was no evidence that could be submitted for DNA analysis and, even if such evidence existed, it would not exonerate the Petitioner. Specifically, the court stated:

> Pursuant to the Post-Conviction DNA Analysis Act, this Court posed a three-part inquiry to the State, as set forth above, to determine whether to order DNA analysis. Tenn. Code Ann. §40-30-[3]03.[4] As to the first question of whether the Petitioner would have been prosecuted or convicted if the DNA analysis had yielded exculpatory results, the State responded as follows:
>
>> The Petitioner would have been prosecuted in this case even if exculpatory results had been obtained from DNA analysis. The Petitioner was positively identified by witnesses as the person who shot and killed the victim . . . .Therefore no reasonable opportunity exists that the Petitioner would not have been prosecuted or convicted based on the strength of the identification testimony.
>
> As to the second question regarding whether the evidence in this case is still in existence and in such condition as could be tested, the State responded that:
>
>> To the best of the undersigned's information and belief, the red hat is still in the possession of the Davidson County Criminal Court Clerk's Office. Due to the age of this case and the fact that the hairs collected from the hat were not introduced into evidence, the undersigned has been unable to locate them and does not believe at this time that they can be located. As to Petitioner's request that the latent fingerprints be subjected to the DNA analysis, the undersigned would submit that there is no reasonable probability that DNA material was deposited with the latent prints and . . . the undersigned has been unable to locate the latent fingerprints as they were not apparently introduced as evidence in either of Petitioner's trials.
>
> As to the third question of whether the evidence was ever subjected to DNA analysis, the state responded in the negative, noting:
>
>> The evidence in the underlying case was not ever subjected to DNA analysis because the technology was not available at the time of the Petitioner's trials. . . . No DNA analysis of any type of evidence collected in this case would exclude the Petitioner as the perpetrator or cast any reasonable doubt upon his identity as such.
>
> After consideration of the State's response to the above inquiry, the Court finds that no evidence exists that would be amenable to DNA testing. Further, even if such

---

[4]As stated in footnote 1, we have changed the statute numbers to the 2003 statute numbers for consistency.

evidence did in fact exist, the Court finds that there is no reasonable probability that DNA testing would have precluded the Petitioner's prosecution or conviction. First, the only evidence that would have been amenable to DNA analysis would have been the hairs alleged to have been found in the perpetrator's red cap; however, as pointed out by the State, if these hairs-which when compared to Petitioner's . . . known hairs the results were inconclusive-were subjected to DNA analysis and were definitively found to be hairs of someone other than Petitioner, such evidence would not exonerate Petitioner as hairs are easily transferable. Second, during the prosecution of the Petitioner, the State relied on eyewitness testimony of several witnesses, which were deemed to be credible by the jury. These witnesses positively identified the Petitioner as the person who shot and killed the victim.

Accordingly and for the aforementioned reasons, this Court hereby DENIES the Petitioner's Request for Forensic DNA Analysis.

We note that there appears to be no disagreement that the hair follicles and fingerprints from the scene are unavailable. Therefore, the only determination to be made is whether the red baseball cap worn by the perpetrator and found at the crime scene should be submitted for DNA analysis under the Post-Conviction DNA Analysis Act. On appeal, the Petitioner contends that the trial court erred in denying his request for DNA Analysis because the red baseball cap is available and can be tested for DNA. Further, the Petitioner contends that a reasonable probability exists that he would not have been prosecuted or convicted of this crime if exculpatory results had been obtained through DNA analysis of the red baseball cap. The State asserts that the red baseball cap does not "fit the purpose" of the DNA Analysis Act because "no analysis results would have prevented the prosecution or conviction of the petitioner." The State asserts that the absence of the Petitioner's DNA on the baseball cap would not exclude him as the perpetrator because "he could have worn the cap without leaving traces of DNA." The State further alleges that the presence of some other person's DNA on the baseball cap would merely indicate that some other person, "at some time, had come in contact with the cap."

Under the statute, some physical evidence must be available and in proper condition to enable DNA analysis. Tenn. Code Ann. § 40-30-304(2). Further, the statute requires that the DNA evidence was never previously subjected to analysis or was not subjected to the analysis that is now requested. Tenn. Code Ann. § 40-30-304(3). In the present case, both of these requirements are clearly met. The red baseball cap is available and has not been subjected to DNA analysis since the technology was not available at the time of the Petitioner's trial. Further, the fourth statutory requirement is met. It is apparent that the Petitioner's motive is not to delay justice or the execution of his sentence, since the Petitioner has been released from prison on parole but continues to pursue this appeal. Therefore, the only issue we must decide on appeal is whether a reasonable probability exists that the Petitioner would not have been prosecuted or convicted if exculpatory results had been obtained through DNA analysis. See Tenn. Code Ann. § 40-30-304(1).

In Alley v. State, No. W2004-01204-CCA-R3-PD, 2004 WL 1196095, at *9 (Tenn. Crim. App., at Jackson, May 26, 2004), *no perm. app. filed*, this Court stated that "[a] 'reasonable probability' of a different result exists when the evidence at issue, in this case potentially favorable DNA results, undermines confidence in the outcome of the prosecution." See also State v. Workman, 111 S.W.3d 10, 18 (Tenn. Crim App. 2002). In Alley, this Court recognized that "[t]he purpose of the Post Conviction DNA Analysis Act is to establish the innocence of the petitioner and not to create conjecture or speculation that the act may have possibly been perpetrated by a phantom defendant." Id. The Court went on to conclude that if the allegation is recent and the evidence supports the petitioner as the offender, a prior confession may be enough to deny DNA testing. In the present case, there is no such confession. The Petitioner has maintained his innocence since being charged with the crime and continues to do so, even after his release from prison on parole.

In Shuttle v. State, No. E2003-00131-CCA-R3-PC, 2004 WL 199826 (Tenn. Crim. App., at Knoxville, Feb. 3, 2004), *no perm. app. filed*, the trial court denied a request for DNA testing from a petitioner convicted of first degree murder of his girlfriend. The trial court found that the requested evidence existed and had not been previously subjected to DNA testing, but further determined that the results of DNA testing would not be dispositive because the petitioner testified at trial that he had killed the victim. Therefore, the trial court concluded that the petitioner had failed to establish that a reasonable probability existed that he would not have been prosecuted or convicted if exculpatory results were found based on the DNA testing. On appeal, this Court reversed the findings of the trial court, holding that if the blood evidence found matched neither the petitioner or the victim, the petitioner would establish a reasonable probability that he would not have been prosecuted or convicted of the crime.

The evidence in Shuttle differs somewhat from the evidence in the present case in that DNA analysis of blood evidence could have definitively excluded Shuttle as the perpetrator in that case. While DNA results may not definitively exculpate the Petitioner, both sides agree that the red baseball cap was worn by the perpetrator of the murder and found at the crime scene. While the lack of the Petitioner's DNA on the cap would not conclusively exclude him from being present and committing the crime, and the presence of another person's DNA would not necessarily mean that another person wore the cap during the commission of the crime, the statute specifically requires that DNA analysis be conducted if a *reasonable probability* exists that the petitioner would not have been prosecuted *or* convicted if exculpatory results had been obtained through DNA analysis. See Tenn. Code Ann. § 40-30-304(1). While exculpatory results from DNA analysis of the red cap may not have resulted in a reasonable probability that the Petitioner would not have been *prosecuted*, we conclude that such results would have resulted in a reasonable probability that the Petitioner would not have been *convicted*. The proper analysis for the trial court under the DNA Analysis Act necessarily includes a consideration of the effect on the jury of evidence showing that the Petitioner's DNA was not present on the baseball cap that was worn by the perpetrator and recovered at the crime scene. In this regard, there is at least a reasonable probability that the Petitioner would not have been convicted if the jury was presented evidence that a DNA analysis of the red baseball cap worn by the perpetrator indicated that no DNA from the Petitioner is present in or on the red baseball cap.

Further, this Court has previously reasoned that the purpose of the DNA Analysis Act is to correct a past mistake, which may have occurred based on mistaken identity or other error. "The Act was created because of the possibility that a person has been wrongfully convicted or sentenced. A person may be wrongly convicted based upon mistaken identity or false testimony." Shuttle, at *5 (citing Brown v. State, No. M2002-02427-CCA-R3-PC, 2003 WL 21362197, at *2 (Tenn. Crim. App., at Nashville, June 13, 2003) (Tipton, J., concurring), *perm. to app. denied* (Tenn. Oct. 6, 2003)). In this case, the Petitioner did not confess to the crime; however, there were two eyewitnesses that identified him as the perpetrator and testified against him at his trial. Nonetheless, the Petitioner's first trial ended in a mistrial when the jury was unable to reach a verdict. In our view, the term "exculpatory results" does not imply that the results of the contemplated DNA analysis must indicate with certainty that the petitioner is innocent of the crime in question. If the Petitioner's DNA is not found in or on the baseball cap worn by the perpetrator of the murder, such is an "exculpatory result" for the jury to consider, along with all the other evidence in the case. A proper analysis by the trial court must include consideration of the effect of this "exculpatory result" on the jury. We conclude that there is a reasonable probability that the Petitioner would not have been convicted if exculpatory results had been obtained through DNA analysis of the red baseball cap, and those results had been presented to the jury. Under the unique facts of this case, there is a reasonable probability that exculpatory results from a DNA analysis of the red baseball cap would have created a reasonable doubt in the mind of one or more jurors. By law, a reasonable doubt in the mind of one or more jurors would have precluded a conviction. Accordingly, we must conclude that the trial court erred in denying the Petitioner's request for DNA analysis of the red baseball cap.

### III. Conclusion

In accordance with the foregoing reasoning and authorities, we conclude the Petitioner is entitled to the requested DNA analysis. Accordingly, we REVERSE the trial court's judgment, and REMAND to the trial court for entry of an order granting the DNA analysis of the red baseball cap as requested by the Petitioner.

_____
ROBERT W. WEDEMEYER, JUDGE